**AUERBACH COMPANY, Plaintiff and Respondent,**

v.

**KEY SECURITY POLICE, INC., Defendant,**

v.

**GUARANTY NATIONAL INSURANCE COMPANY, Garnishee and Appellant.**

No. 18688.

Supreme Court of Utah.

April 4, 1984.

Leonard H. Russon, Scott W. Christensen, Salt Lake City, for Guaranty Nat. Ins.

William J. Hansen, Salt Lake City, for Auerbach.

DURHAM, Justice.

By this appeal Guaranty National Insurance Company ("Guaranty National"), appellant and garnishee, seeks reversal of the judgment against it as insurer of Key Security Police, Inc. ("Key Security"), judgment debtor, in favor of Auerbach Company ("Auerbach"), respondent and garnishor. Guaranty National contends: (1) the policy between Key Security and Guaranty National excludes coverage for property in the care, custody and control of the insured; (2) the statute of limitations is a complete bar to recovery by either Key Security or Auerbach; (3) Auerbach has no standing to bring the garnishment action; and (4) the trial court committed reversible error in its ruling on the issue of prejudice. We address only appellant's second and third points, which are dispositive. We hold that Guaranty National's liability, if any, was not subject to garnishment by Auerbach and could not be subject to garnishment under the terms of the policy. We also hold that the statute of limitations is a bar to an action on the policy. We therefore reverse.

The pertinent facts are as follows: Auerbach and Key Security had an agreement whereby Key Security would transport Auerbach's daily receipts to its bank for deposit. On the evening of January 3, 1974, while transporting Auerbach receipts, an employee of Key Security was robbed at gunpoint.[1] At the time of the robbery, Key Security had an insurance policy with Guaranty National. On the morning of January 4, 1974, the Key Security president orally notified an insurance agent of the robbery. At that time the extent of the loss was unknown. Neither Guaranty National nor Key Security took any further action.

Auerbach filed an action against Key Security on February 13, 1976, for approximately $9,700, the amount unrecovered by police authorities. John Surrage, president of the then-defunct Key Security, was served on February 19, 1976. Auerbach obtained a default judgment against Key Security on September 9, 1977. On May 9, 1979, Auerbach filed a motion and order in supplemental proceedings and at the scheduled proceedings on November 28, 1979, was informed that Key Security had a policy of insurance with Guaranty National at the time of the robbery.[2] Auerbach caused a writ of garnishment to be served on Guaranty National some seventeen months later on April 8, 1981, garnishing the policy in an amount equal to its default judgment.

Guaranty National's "Answers to Interrogatories to Garnishee" are not part of the record, but apparently they denied any indebtedness to Key Security. In its "Reply to Answers of Garnishee," Auerbach asserted the following: (1) that the garnishee wrongfully denied coverage to defendant and is obligated to pay plaintiff the full amount of its judgment against Key Security; and (2) that by reason of the garnishee's wrongful denial of coverage the garnishee waived its right to claim or was estopped from claiming that Key Security failed to meet the conditions of the policy.

The questions presented by this appeal are: (1) whether the liability of Guaranty National, if any, as alleged by Auerbach in its reply to garnishee's answers, may be reached by garnishment; and (2) whether the statute of limitations bars recovery on the policy.

■ Guaranty National argues that Auerbach "lacks standing" to bring this action. *Paul v. Kirkendall*, 6 Utah 2d 256, 311 P.2d 376 (1957), is relied on for the proposition that the garnishment statute does not contemplate litigation of a chose in action between the judgment creditor and the garnishee. There, the judgment creditor claimed bad faith on the part of the insurance company for failing to settle the claim within policy limits and garnished the policy. This Court analyzed Utah R.Civ.P. 64D relating to garnishment and concluded that a garnishment proceeding is not the proper method to determine liability of garnishee to defendant (insured) upon the tort asserted by plaintiff (garnishor). *Id.* at 260, 311 P.2d at 378. This Court further stated: "We are of the opinion that (as of the time the garnishment was served) the claim of defendant set out in the second reply is not a debt presently due from garnishee .... Rather it is an unliquidated tort claim." *Id.* at 261, 311 P.2d at 379. In the instant case, Auerbach's claim against Guaranty National for wrongful denial of coverage sounds in tort, and the reasoning of *Paul* is applicable. Auerbach, as garnishor, is not the proper party to pursue Key Security's tort claim, if any,

---

1. Appellant and respondent in their briefs and the trial court in its findings of fact state the date of the robbery as January 3, *1973*, but the undisputed testimony of two policemen, an Auerbach employee, Key Security officers and an insurance agent set the date at January 3, *1974*. At the commencement of trial, in fact, counsel for both parties indicated to the court that the pleadings incorrectly stated 1973.

2. The motion and order directed Eugene D. Adams or Jene Ambrose to appear at the supplemental proceedings as defendant. Mr. Adams had been president of Key Security until he sold the business to John Surrage as of December 31, 1973. He was never named as defendant in the suit. At the proceedings he disclosed the existence of the policy. The reason for his appearance is unexplained in the record.

against Guaranty National, and a garnishment proceeding is not the proper context in which to determine whether such liability exists.

Auerbach denies that it "appropriated" Key Security's tort claim for wrongful denial of coverage in spite of its pleadings, but contends that it instigated garnishment proceedings "to collect its *liquidated* judgment of $9,741.73 against Key Security from the insurance proceeds of the policy issued by Guaranty National." Auerbach further argues it is "not trying to obtain the rights of Key Security against Guaranty National, but rather is seeking to obtain money which Guaranty National owes Key Security, pursuant to the terms of an insurance policy which provides for payment in the event a valid judgment is rendered against its insured."

■ Auerbach mistakenly relies on its judgment against Key Security as a liquidated claim instead of on the claim between Key Security and Guaranty National. It is undisputed that no proof of loss was ever submitted, nor was any investigation or claim adjustment made to Guaranty National with respect to the robbery. Auerbach attempts to avoid the characterization of its claim against Guaranty National as either tort or contract. As a garnishor, Auerbach may act only within the framework of Key Security's cause of action; its rights if any, against Guaranty National are derivative in nature.[3] Auerbach may not pursue Key Security's claim of wrongful denial of coverage through a garnishment action, and we hold that Guaranty National's liability, if any, is not subject to garnishment.

■ Furthermore, Auerbach erroneously claims that the policy provides for payment "in the event a valid judgment is entered against the insured." Paragraph 13 of the policy reads as follows:

13. Action Against Company—Coverages A, B and D: No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after *actual trial* or by written agreement of the insured, the claimant and the company. [Emphasis added.]

Accordingly, under this provision, a default judgment does not entitle even the insured to recover under the policy. We hold that under the foregoing provision there can be no action by Key Security and therefore no garnishment of any potential liability of Guaranty National.

■ In the alternative, if we view Auerbach's derivative rights as contractual in nature, which it claims in one context and denies in another, Auerbach stands in the shoes of Key Security, *Lang v. Lang,* 17 Utah 2d 10, 13, 403 P.2d 655, 657 (1965), and its claim is barred by the statute of limitations under the policy provision above and U.C.A., 1953, § 78–12–23, which provides for a six-year period of limitations on instruments in writing.

The insured never complied with the terms of the policy requiring written notice to the company (paragraph 9) and giving notice of a claim or suit (paragraph 10),[4] nor was there a final determination of the obligation by actual trial or by agreement of the parties. The garnishment of Guaranty National on April 8, 1981, represents the first institution of any suit on the policy. That occurred more than seven years after the robbery. Auerbach cites *Myers v. McDonald,* Utah, 635 P.2d 84 (1981), for the proposition that the statute of limitations does not run until the injured party discovers the facts forming the basis for a

---

**3.** Since Auerbach lacks privity with Guaranty National, it cannot sue in its own right. *See Ammerman v. Farmers Insurance Exchange,* 19 Utah 2d 261, 430 P.2d 576 (1967); *Utah Farm*

*Bureau Ins. Co. v. Chugg,* 6 Utah 2d 399, 315 P.2d 277 (1957).

**4.** At trial Mr. Surrage stated he did not notify Guaranty National of the action by Auerbach.

cause of action.[5] The decision in *Myers*, a wrongful death case, is inapposite to the case at bar for reasons we need not delineate here. Auerbach does not offer any acceptable rationale for holding that the cause of action (losses incurred in the robbery) arose on any other date than that of the robbery itself.

The judgment below is reversed, and the case is remanded with directions to enter judgment for the garnishee.

HALL, C.J., and OAKS, J., concur.

STEWART, J., concurs in the result.

HOWE, Justice (concurring in the result).

I concur in the result on the ground that any action on the policy was barred by U.C.A., 1953, § 78–12–23(2).

---

**5.** Auerbach contends this was May 9, 1979, the date of its motion and order for supplemental proceedings. It appears from the record that Auerbach discovered the existence of the policy on November 28, 1979, the date of the proceedings, but that discrepancy is not material to this decision.